Good morning, your honors. If it pleases the court, Jamie L. Johnson, appearing on behalf of DC Associates. I find myself vocally challenged after getting off my sickbed yesterday, so if I can reserve five minutes of time. You may do so, counselor. Just watch the clock. Thank you. I'd just like to start by briefly going over the timeline of the party's By the party's relationship, I mean the most important relationship here, which is between Local 11 and DC Associates, because that's the foundation for any claim by the trust funds. The truth is that there was very little relationship between the trust funds and DC Associates from the inception of DC Associates operations. I think the problem in this case is there are at questions of fact that need to be addressed in terms of whether summary judgment was appropriate. Now maybe... Please, if you have questions, please go ahead and ask them before I talk myself out. My suggestion to you is, instead of telling us the overall history here, why don't you go into the specific questions about, for example, was it appropriate to ignore the alarm agreement? Oh no, that's the whole point I was getting to. All right, okay. By the party's, I mean Local 11 and DC Associates, they had a collective bargaining relationship that goes back to the early 1980s. No one knows exactly when. At that point in time, as shown by the declarations we submitted to the district court, they specifically negotiated agreement called the Security and Fire Protection Index Agreement to remove alarm installation work performed in Los Angeles County from the jurisdiction of the sound agreement. Now there's arguably three different agreements that were operative during that time frame, which might apply to alarm installation work. One is the sound agreement, one is the Insight Wireman's Agreement, except there's only one agreement which was negotiated for a sole purpose, and that's the alarm agreement. So we have a collective bargaining relationship that goes from 1982 up until, well, in the timeline I was going to go through, up till 1996, they continued to use the alarm agreement on all work in Los Angeles County. Now in 1996, sort of the predicate for this action was DC Associates signing a letter of assent to the San Bernardino and Riverside locals, which would permit it, to the sound agreement, which would permit it to do alarm installation work in those jurisdictions. Counselor, if I may, I know that you don't feel well, and I'm trying to try to see what I can get you to husband your energies. I think we have a general idea of the background. Maybe you can tick off a couple of examples of why there are material issues to the fact which require reversal. Okay. Well, the fact that after the 1996 letter of assent, which supposedly, according to their declarants, obligated DC Associates to use the sound agreement in Los Angeles County, there were two successor agreements of the alarm agreement negotiated. And in between 1996, up until the initiation of this action in 2008, the alarm agreement was used on all DC Associates work in Los Angeles County. So you have the conduct of the parties in renegotiating an alarm agreement, which, if you accept the proposition that the 1996 letter of assent to San Bernardino and Riverside was intended to cover alarm installation work, would have been unnecessary. So I think that's one fact. The other, I think that's enough in itself. I mean, this agreement has been out there, and the court issued its decision without reference to it, literally without reference to it. There was no reference to the alarm agreement in the moving papers, and there was no reference to the alarm agreement in the court's papers. You have the declaration of Doug Cooley, who negotiated the alarm agreement on behalf of Local 11 at its inception, and he's no longer affiliated with anybody. He has no dog in this hunt. And his declaration says that the specific purpose of that negotiation, and the specific purpose of forming the SFPIA, and the specific purpose for negotiating the alarm agreement was to take it away from the jurisdiction of the sound agreement. There are other facts in the record which suggest why that was done, and those facts are contained in the declarations of Donahue and Latham, and in essence it was done because the alarm installation businesses operated on a completely different model. They had to train technicians in the installation of specific systems, while the sound agreement called for drawing electricians from a generalized pool of electricians who may or may not have the necessary certification in those specific alarm systems. It would have been impractical to use the sound agreements in Latham's declaration that when he, at one point when he had actually asked Local 11 to provide additional electricians to work on projects when he was shorthanded, they refused. If the sound agreement had been the operative agreement, they would have been obligated under its terms to go ahead and provide that labor. So I think that there's, the fact that there's an agreement which covers the work here, and I guess I should address that point, there's, when, in district court as you know, in central district, you get a summary judgment you have one week to prepare your opposition, and I always operate under the KISS principle, keep it simple, and so I focused on the existence of this agreement, the fact that it had operated continuously to cover this work within basically a 25-year timeframe, and that this was alarm work. In order to establish it was alarm work, I submitted a declaration from Doug Latham, and also the proposals and bids which correspond precisely to the numbers, the job numbers identified in the trust funds audit, and all documents indicate that the equipment being used was things like alarm sirens, fire detectors, and the documents themselves are called fire alarm proposals. Now, it was suggested at the district court that that wasn't sufficient evidence, but we're not talking about whether the evidence is the evidence you would choose, it's whether it's sufficient to create a triable issue of fact, and I would submit that the unrebutted evidence of the existence of the alarm agreement, the evidence of what that agreement was intended to do and how it operated continuously from its inception up until the initiation of this action, and the unrebutted evidence which showed that the work at issue was alarm installation work is enough to create a triable issue of fact. Mr. Johnson, could you explain to me the significance, and I forget the acronym for it, but there was some sort of a piece of paper that needed to be signed to do work for the LA Unified School District? Oh, the PSA? The PSA was an agreement which was negotiated by NECA, which is the National Electrical Contractors Association, of which my client is not a member, and Local 11 and several other trade unions and employer organizations, none of which my client is affiliated with. They reached an agreement which doesn't specifically reference the sound agreement, but says that you must become signatory or you must have a contract or meet certain standards in order to perform LA Unified work. It also says that all contractors performing work shall be presented with this document prior to commencement of work. My client was never shown the document before work, during work, or really didn't come out with it. There's an exploration that they didn't have a clue at all about this existence. They didn't, and the trust fund submitted some arbitration decisions with its brief, but all those arbitration decisions include specific references to the employer being on specific written notice that the jobs are subject to the PSA, and also the initiation of dispute mechanisms which existed under the PSA in order to compel their compliance with it. In this instance, the claim was not asserted until after the jobs were completed, and there was never any notice given to my client, and there's no record in the evidence to suggest there was. So it's completely ex post facto. It only covers a small portion of the money that we're talking about here also. Yeah, it's I think about $50,000 or so of the $200,000 judgment. About 25%. I would submit that there's a tribal issue of fact based on... I wouldn't ask for that, but certainly as to the other $200,000, you have tribal issues all over the ballpark. I submit the whole thing is tribal issues. Counsel, you're down to five minutes. I'll reserve. Thank you very much. We'll hear from trustees. May it please the court, Paul Moorhead on behalf of Pelley's trustees of the IVW NECA trust funds. So about what view of the record do you rely upon to support your claim that summary judgment should have been issued? In other words, there's just absolutely no material issues of fact. What's your best shot here? Trustees do not argue with the fact that DC was bound to the alarm agreement. They were also bound to the sound agreement. ERISA requires them to keep records that allow the trustee to determine if contributions are owed. They maintain those records. Those included the trust fund reports, the certified payroll records. Wait a second, counsel. I heard Mr. Johnson just tell us that DCA didn't think it was bound by the sound agreement. It was bound by the alarm agreement, which was carved out and separate from. So isn't that a contested issue of material fact? I do not believe it is. They were bound to both agreements. I understand that's your position. They're saying we didn't sign the sound agreement, nor did we sign this PSA. We signed an alarm agreement. Why isn't that a contested material fact that's in dispute? DC Associates signed a letter of assent to the sound agreement. For San Bernardino and Riverside counties, but it doesn't say anything about work in Los Angeles. The sound agreement is a large multi-jurisdictional agreement that covers approximately eight different jurisdictions in Southern California. I understand that's your position, but DCA is saying we signed a letter with the San Bernardino and Riverside locals saying that we would agree to adhere to the sound agreement for work done in those counties, but the alarm agreement was the operative document for work done in Los Angeles County and the Los Angeles Unified School District Bill, I think we can take judicial notice, is in Los Angeles County and not the other two. Why do we not have a contested issue of material fact? A couple of reasons. If you look at the letter of assent, it says that they're bound to both the sound agreement and to the local addendum for work in San Bernardino. Yeah, it says locals 440 and 476. That's Riverside and San Bernardino. But we're talking about work done involving local 11. Okay, but they say the sound agreement states that they're bound to the sound agreement as a whole and to the local addendum. There's a special local addendum. The problem here is that Judge Reel decided this case on summary judgment, and the question is whether he can make factual determinations on contested issues in a summary judgment order. I think the other, I guess, even more telling fact here is that their own trust fund reports admit that they performed sound work in Los Angeles. They submitted contributions, a sum amount of contributions, to the trust funds for work performed in L.A. that was covered by the sound agreement. This case was never tried. It was decided on summary judgment, and those are contested. But the contribution reports that they submit, though, are not contested. It specifically lists sound work performed in local 11. They paid contributions on this work. There would be no reason. They do contest the applicability of those, arguing that they're at least ambiguous and they're not subject. There's absolutely no reason for them to pay contributions for work. If, in fact, they don't think they're bound to the sound agreement for work in Los Angeles. I have to confess I'm a bit confused by the record, but even if there is the existence of the state ruling that didn't recognize alarm technicians in the labor codes on those reports, have I got the question right? I understand what I'm asking about. I thought there was some dispute about whether or not the state labor agency changed the worker classification codes and eliminated a separate code that used to exist for alarm technicians. That's correct, but that has nothing to do with them submitting reports to my clients, no. They have to have an agreement to submit monies under the sound agreement. There has to be an agreement that requires them to do that. And they submitted. There's the agreement and there's their letter of assent, and then they followed through with that by actually submitting the funds. Let me just talk. I mean, there's so much here I don't know where to start, but let me just pick out something about your letters of assent. Explain to me why the local 11 continued to negotiate extensions to the alarm CBA with DCA's employee association for more than a decade after the 1996 letter. I mean, why did they do that? There's multiple agreements here. We admit there's multiple agreements. Well, would you agree that local 11 was never a party to the 1996 letter? As being part of the multi-jurisdictional sound agreement, yes. Would you agree that Latham has a declaration which wasn't even referenced by the district court judge and probably wasn't even considered by the district court judge as DCA's principle, where he refers that he signed the 1996 letter that governed DCA's relationship with IBEW locals and other jurisdictions? And that seems to be borne out certainly by the letter that you rely upon, which is at the very least ambiguous. How do you deal with this? The Latham and all the other documents that were submitted. By looking a number of ways. First of all, by looking at his conduct in submitting reports to the trust funds, admitting that he has performed sound work in local 11, and submitting contributions for that. He also says that he paid $23.08 on these public work projects that you rely upon in terms of these payrolls because it was required to under California's prevailing wage laws, which base their calculations on the second CBA. There's just a host of statements here that are made by the principles that have to be resolved at a trial. The issue here is that ERISA requires you to keep contributions that would allow the determination of benefits paid. When you keep four years' worth of documents that classify all the work within the sound agreement, you can't just come forward with a declaration saying, oh, that's all incorrect now or unclear to overcome summary judgment. I guess my problem is the same. How can that be determined on summary judgment? Because we have previously sworn statements prepared over four years of time where all work is classified under the sound agreement, not the alarm agreement. I don't think all work is being classified under the sound agreement throughout the entire jurisdiction that we're talking about here. This four years of certified payroll records that were relied upon, everything was classified as a common sys-installer, which is specifically a classification in the sound agreement. There's an explanation for that that lays it in the other people often that you don't want to pay any attention to. And that's the change in the labor codes. And there's absolutely no payroll records. There's no ERISA-approved records to back that up. All there is is an anecdotal declaration stating that that's all wrong. We know from the state, though, that the codes were in fact changed, do we not? Yes, I believe they were changed. So there is no code today that would cover alarm technicians outside of whatever the more broader classification. That's even more of a reason for them to keep payroll records that would distinguish this work. Well, let's go to another issue of fact that I think is disputed, and that is how do you get around the fact that they never signed the project stabilization agreement, yet they did work on the LA Unified School District projects? The project stabilization agreement is a very large agreement that covers approximately 1,000 schools. It was negotiated between LA Trades Council, which is a bunch of different local unions, and the LA Unified School District. The agreement itself states that in order to work on the project, you are bound to that project stabilization agreement. That's the testimony of the bargaining parties. It's the practice in the industry. And there's a number of arbitration decisions that say signing a document isn't the question we ask when determining if you're bound to the PSA. So these pages of signatures really don't mean anything. The way you get DCA into this agreement is you just say, well, they did work on the project, even though they had no idea of the existence of this contract until after the work was performed. Those signatures are signatures from the local unions, not from any contractor who performed the work on the job. So every contractor who did work for the Los Angeles Unified School District on 1,000 schools had no idea that in doing so, it was being bound by the terms of the sounders. I think they knew. In this case, Mr. Latham's declaration actually states that he didn't find out until the jobs were pending. So it's not that he didn't know about it at any time. But that means that pending, does that mean that the job had already begun? I believe so. But according to all these arbitration decisions in the industry and the practice in the industry, by working on the job, you agree to be bound. Let me go back to these payroll reports. Once again, I look at Latham's affidavit. He says other things. He acknowledges that he paid his $23.08 based upon the wages and the sound at CBA. But he also says that DCA did so because no other classification was available after 2003. Do you agree with that? Yes. I agree that the alarm classification was not. He also says that the classification for fire alarm technician was eliminated at some point in 2002 or 2003. That was why DCA used sound tech or sound installer. And he goes on to say, for example, that payroll records were submitted on projects that included work that clearly fell within the scope of the work laws of the alarm CBA. He gives an example, and maybe you can comment on this. He says the Bundy Campus Project specifies the installation of fire control units, smoke detectors, heat detectors, et cetera, which is covered under the alarm. All we have there is a declaration. Again, there's no payroll. But that's the whole idea. There's no. It's called evidence. But you can't. And what's in dispute. But in ERISA, you can't negate payroll records with a mere declaration. Okay. They're signed payroll records under penalty of perjury. I think we understand. I think the one last point I would make is under this Brickmason's case. Brickmason's case adopted the burden-shifting analysis presented in the Combs case, an 11th Circuit case. Once the trust proved damage is performed, I'm sorry, once the trust proved that defendant performed some amount of covered work on which contributions are owed, but that defendant failed to keep adequate records, the burden shifts to the employer to come forward with evidence detailing the hours of covered work versus non-covered work. It's clear that D.C. afforded at least some work covered by the sound agreement. First off, D.C.'s defense is based solely on the alarm agreement. The alarm agreement covers only work in Local 11's jurisdiction. It doesn't cover any work in any other jurisdiction besides that. However, the trust audit includes work in other jurisdictions, including San Bernardino and Riverside counties. Local 11, though, I take it, is commensurate with the geographical boundaries of Los Angeles. That's correct. Local 11. Los Angeles County. Okay. Work in L.A. County, you're doing work in the jurisdiction of Local 11, and we've got declarations that say we negotiated a separate agreement for that work that took it out of the sound agreement, and we call that the alarm agreement. But there's, again, I mean, it gets back to the fact that there's two agreements covering the same work. That's right. Covering, no, we have two agreements, one of which covers work in San Bernardino and Riverside County, the other covers agreement in Los Angeles County, but you're trying to tag them under the San Bernardino agreement for the work they did in Los Angeles County. But in Los Angeles County, they're bound to two agreements. They're bound to the sound agreement. The sound agreement is a multi-jurisdictional agreement. I mean, all the bargaining testimony supports that. Did you make that argument to the district court? Absolutely. I would have thought that the district court would have referenced the fact that there was an alarm agreement, if that's a significant fact. That was the, the alarm agreement was absolutely before the district court when the summary judgment motion was heard. One would never know it from reading his decision. Not one mention of the alarm agreement in the judge's decision. I think when the, honestly, when the separate statement was drafted, there was, at the time it was proposed, there was no evidence of the alarm agreement in yet. There was no evidence that any of this work was alarm agreement at the time. If what you said is true, then what was Mr. Cooley talking about when he explained how the alarm agreement came into effect? Well, I think Mr. Cooley's testimony, you know, it supports the fact that there was an alarm agreement, but it does nothing to differentiate work performed by DCA associates from either the alarm agreement or the sound agreement. It makes absolutely no sense to me why a separate alarm agreement would ever be needed. Why would you negotiate a separate agreement if your position is they're already covered by the sound agreement? I agree it took certain work out of the sound agreement, but they're bound to both. There's work that would be covered by the sound agreement that would not be covered by the alarm agreement. How do we know that on this record? Isn't that what a trial is going to have to enlighten the fact finder on? I think the record is clear that they're bound to two. Counsel, the record is anything but clear. Two separate collective bargaining agreements, the alarm agreement and the sound agreement. Counsel, I think we understand your argument. Your time has expired. We will hear from Mr. Johnson who has a little bit of reserve time. Just I'll try to keep it brief for my own self-preservation. You're doing fine. Thank you. I'm working hard at it. Maybe you don't have to work so hard. Yeah, okay. I'll just make it quick then. At page 57 of the record, there's an explanation for why there were occasional reports submitted to the trust funds. He referred to these as four years of reports. And essentially the explanation is that Latham would sometimes borrow labor from a hiring hall in Orange County, and by agreement with the local in Orange County, he would pay those under the sound agreement since they were not subject to Local 11 necessarily. So take that canard out. The other thing is the representation of the Brickmasons case. Brickmasons said you have to keep records of the time worked, the employee, the job, and the amount of compensation. And if there's any ambiguity, it says, the employer has to bring forward evidence. Well, I would submit that's exactly what we did. We brought forward evidence of the type of work being performed, evidence of another agreement which covered the working question. And the problem is that that evidence was never considered in the decision of the district court. And I'll submit on that. Very well. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn. I'll rise. The court for this session stands adjourned.
judges: Block, O'scannlain, Tallman